Mr. Rothschild. Good morning. May it please the Court, Your Honors. Good morning. I'm Ken Rothschild. I represent KSI. I reserve four minutes with Your Honor's permission for rebuttal. We're all familiar with the old adage about oral argument and counting on facts and pounding on the law and pounding on the table. And this is a unique case because there really aren't any facts to pound on. There really isn't any law to pound on. And neither my adversary or I are the type to pound on the table. What we have to do, though, is we have to look at the policy that's at issue and examine the language of the policy and determine how it applies to the specific facts. And again, those facts are not in dispute. If Your Honor will indulge me for a moment in reviewing the language of a policy, I'm compelled, I feel, to mention or to read again the quote from our reply brief dealing with the description of insurance policies, which reads as follows, Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most are a virtual impenetrable thicket of incomprehensible verbosity. It seems that insurers generally are attempting to convince the customer when selling the policy that everything is covered and convince the court when a claim is made that nothing is covered. The miracle of it all is that the English language can be subjected to such abuse and still remain an instrument of communication. And I think that aptly describes what we're dealing with with this particular policy. So let's turn then to the policy and determine what it is that this policy actually says. When we read the policy or in any insurance policies, it's first necessary to understand the specific terms. Most terms in a policy are common language that we use every day. But occasionally within a policy, there are terms that either have no meaning whatsoever unless they are given meaning by the policy or there's a definition that's For instance, we're dealing with two common words, but in the context of a policy, don't really have much meaning. Those words are property insured. Now some policies, language is capitalized or there's sections in the policy that specifically is entitled definitions and you can go right to those definitions to determine what property insured actually means. But that doesn't appear in this policy. Unlike a homeowner's policy or an auto policy where the property can be described very specifically, VIN number, property address. Here you have a business that the actual property varies from day to day. They are purchasing and then reselling various automobile parts. Some come from overseas, some come from domestic sources. What's interesting is that despite the fact that the policy we believe has a very clear portion of it that spells out what it is intended to mean when it says property insured, in all the briefs submitted by my adversary, he never indicates what the definition really is. He never says that the bold letters in section one of the policy are not the definition and he never says they are the definition. He simply argues or Royle simply argues that the policy doesn't apply for a host of different reasons but never really takes issue with the fact that the property insured is defined I think clearly in bold letters as merchandise that the insured acquires in the ordinary course of its business consisting of automobile parts. That's the definition of property insured. Now section one does go on to have terms and conditions like any other portion of a policy that say when there might be payment for a property. But nowhere in the policy is there any definition other than automobile parts. It doesn't say in section one automobile parts imported and it doesn't say automobile parts that are acquired domestically. It never says we're going to cover property that comes from England but not New England. It simply says automobile parts. Is it your view that property insured means the same thing in all places? Well it has to your honor. The definition can't be different in section one and in section two and in section three. The term standing alone has no meaning. So in your view it's your client's property in the warehouse? That's correct. Now but in section one that property would only be insured. Having said that though. I'm sorry? Having said that and we're looking at this case under New Jersey law. Correct. You have to look at the policy as a whole. You can't ignore the exception in paragraph five of section one. You can't in reviewing what is provided in the ocean marine portion of the policy. That's a condition for coverage under that section of the policy. But we're not talking about coverage for section one. We're talking about warehouse coverage. Coverage section one deals with cargo that's on the deck or under the deck or in the airplane or in transport overseas. Over the seas. Section three however. Well but it's. I'm sorry. Explain to me then how ocean marine coverage could apply to shipments that this that your client had that originated in the United States. Well your honor I'm glad you asked that because I can't figure out how section two could be part of this policy except to say that this policy provides more coverage than simply ocean marine. In fact if you look at the very cover of the policy which is 839 in the appendix. It's not called an ocean marine policy there. It is an open cargo policy. Where is that? That's page 839 of the appendix your honor. At the top. It's called what? Ocean? I'm sorry. Open cargo policy. The policy has three sections. The first section is for overseas transit. There's no dispute about that. The second however is for domestic transit. And Royal has acknowledged that merchandise involved in domestic transit under section two of the policy would be covered. So a property going from Chicago to Miami is covered. Whether or not it originates as a marine cargo. Precisely. And it's the same definition in section two. The same term is used. Property insured is the definition that's used in section two. And property insured is the term that's used in section three. So that while section one only provides coverage to property while it's in transit overseas. Section two provides coverage for both domestic and foreign originated merchandise that's in domestic transit. What provision are you hanging your hat on for coverage? Well the entire, the entirety of section three. And there's no dispute. Royal has not disputed that section three of the policy provides coverage for this loss. Section three refers back to section one. It does. And it refers back to section one for the definition of property insured. And the definition of property insured is not limited to international merchandise. It simply says merchandise used in the business, primarily automobile parts. Section two also refers to property insured for its coverage. And we know that under section two, Royal has acknowledged that the coverage would apply to both domestic and international. It's not disputed. As a result, the only conclusion that you can reach is that the term property insured, as used throughout this policy, must include both international and domestic merchandise. What happens though under section one is that there are terms and conditions that do say when they will pay for a loss to that property insured. But it doesn't alter the definition. It only alters when the particular reimbursement would be made for loss. So that we have the same definition. And, Your Honor, when you ask whether there can be different definitions, there can. If Royal intended there to be different definitions of the term throughout the policy, it could easily have done that. But it did not. It used the term property insured and, interestingly, in the first section of the policy, the only portion of the policy that's in bold letters stands immediately adjacent to the title of that paragraph, property insured and insurable interest. So when you're looking to see, when a policyholder reads the policy and sees, well, I need to find what is property insured, and the section you're reading refers you back to section one to find it, there it is in big, bold letters with no restrictions on either international, excuse me, or domestic merchandise. Now, I want to get to the... It sounds to me like you're making an argument that this policy is clear. Well, I think it's clear that the coverage applies. So you're not arguing today that there's an ambiguity? Well, I'm forced to argue that if you don't agree with me that the policy is clear, that there'd be an ambiguity. There's an ambiguity. And obviously... Which part of the policy is ambiguous if we don't agree with you that it's clear? Well, I think the definition and how it applies, at best, what you have, if you accept my interpretation... Is it always a little bit ambiguous, as you indicated in your initial... I think there's a difference between complicated and ambiguous, Your Honor, and I think that's what we have. And that's, yeah, complicated. All policies, I would agree, are complicated. Some are ambiguous. I think this policy is ambiguous. This is ambiguous where? Well, I would say when you can't determine whether property insured for section three includes domestic merchandise, and yet it's acknowledged that it would be covered in section two as domestic merchandise, and yet the same phrase, property insured, is being used for both. The phrase either has to mean what it says in both sections, or I guess you could say it's ambiguous. But I think looking at the interpretation that was made by Royal's own people, they thought initially that there was coverage. They said, well, we better take a look at the rest of the policy before we confirm our initial thoughts about it, because they only saw sections one and three. And yet when you read section two, it does nothing more than bolster the argument that property insured as a term in this policy means both domestic and international merchandise. But it has to do with shipments, doesn't it? Well, it's a three-section policy. One deals with international shipments. Two deals with domestic shipments. And it's known, Royal knew when they underwrote this policy, that when the merchandise is shipped to KSI, it's put in warehouses until it's sold, and then it's shipped out from those warehouses to the purchaser, and it has to go back into transit. And yet Royal would say there's coverage for domestic and international being shipped to the warehouse. There's coverage under section two when it's shipped from the warehouse to the ultimate purchaser for both domestic and international. But somehow it loses coverage when it's in the warehouse. Mr. Rothschild, I looked in the record for this, and it maybe doesn't make any difference. But is there anything in the record that indicates there's any other insurance from any other insurer on merchandise in the warehouse? There is none. There is none. There is none. And does the record indicate that? I don't recall, Your Honor. I was not on counsel below. It certainly doesn't indicate to the contrary, anyways. Well, I don't know that the record reflects it, but I know as a matter of fact. Okay. And I can represent that to the court. Okay. Well, I know your time is up, but I have to ask you about the consequences of an ambiguous or complicated policy. Thank you. Because New Jersey law helps you quite a bit. Very helpful. Your Honor, if my interpretation of the policy is a fair and reasonable interpretation, I have to win this argument. Because even if Royall's interpretation is also fair and reasonable, you have two contrary interpretations. And New Jersey law says when that occurs, the court must find in favor of coverage. Favor of coverage. So the only way that my position can be defeated is for the court to find that our interpretation is unfair, unreasonable, and just doesn't make sense. We can also get into the intent of the parties at the time of the conflict. I can, Your Honor. Well, I understand that you were paying premiums that included coverage for your merchandise while in a warehouse. That's correct. Whether or not it was going to be shipped internationally. Well, we don't ship out internationally. It only comes to us internationally. Well, the underwriter testified that in order to calculate the premium for this type of policy, you do it based on the gross sales. You don't count how many widgets are in the warehouse. And he testified that to do this, he took the gross sales for KSI for the year, applied whatever multiplier that this type of policy requires, and did the multiplication. And that's the premium. He testified he never subtracted any portion of the premium to represent what he was now considered to be non-covered merchandise. We did $50 million worth of business a year. He multiplied $50 million times his multiplier. And that was the premium. If $5 million of that business was domestic, it didn't matter. If $20 million of it was domestic, it didn't matter. The premium was the same. What their argument would require us to do is we'd go out and buy another policy. And that's the question you asked about the existence of another policy. Buy another policy for this narrow channel of coverage. Pay another carrier a premium to give us basically twice the coverage. Because the only way to be sure that we would have full coverage would be to buy $2.5 million of international merchandise and $2.5 million of domestic merchandise and still only have $2.5 million worth of merchandise in the warehouse. Doesn't make any sense. Mr. Rothschild, thank you very much. Thank you. We'll get you back on rebuttal. Mr. Lowe. May it please the Court. My name is David Lowe. I represent Royal Insurance Company, Your Honor. Our position is that the policy is non-ambiguous, that it's clear and unambiguous on its face. What's the significance of the bold print of the policy? We don't necessarily see much of a significance of bold print in the policy, Your Honor. We think that the term property insured is applied consistently throughout the three sections. We say that with respect to Section 3, which relates to warehouse storage assurance, it says, and it's on page A94, this policy is extended to cover property insured under Section 1, which is the property to be assured, et cetera. So we're saying that the term property insured is defined in the policy. When I say what's the significance, let me ask the question this way. What's the purpose of the bold print in the policy? The bold... What was the intended purpose? Well, I'm not sure if I follow the Court's question, Your Honor, because I don't see any bold print that relates to the question of property insured. Why did the insurer... I'm sorry? Why did the insurer put that language in bold print? It didn't put it in bold print. It just merely capitalized it, Judge. Capitalized it. Okay. Yeah, because it wanted to draw attention to it, Judge. It wanted to emphasize that information. Why? Well, because it relates to this question of property insured. It defines property insured as missionized incidental to the insurer's business, consisting principally of automobile parts. And that term, I think, is applied consistently throughout the policy. If you didn't look at any other section of the policy, would that language not cover Mr. Rothschild's claim? With respect to Section 3, Your Honor? No, no. Section... Yes, I'm sorry. Section 3 of... No, Paragraph 3 of Section 1. Paragraph 3, Section... Merchandise incidental to the insurer's business, consisting principally of automobile parts. If we're looking at only... That is what property insured means. If you just look at that phrase, would that not cover... Correct, Your Honor. If we just look at that phrase alone, that is correct. But you can't look at that phrase in and of itself, Your Honor, because it relates to Section 1. Section 1 relates to international transit. That's the purpose of this Section 5 of Section 1, which is on page A82. And that reads, you know, places in the world excluding shipments originating in the United States throughout the 48 contiguous states. So it's clearly an international policy. The problem is that they're two different... Could you not have put that phrase in Section 1? In other words, could you not have put the exclusion in Paragraph 3 of Section 1 and made clear that property that is designated or destined for foreign shipment is not covered? Sure. We could have repeated it, Your Honor. I can't disagree with you on that particular point. But our position, Judge, is on Paragraph 1 of Section 3. It says to cover property insured under Section 1. So it relates to how property insured is applied in Section 1. And as is applied in Section 1, it has an exclusion related to international shipments, Your Honor. Okay? So that's our basic position in the case. If I could step back for a moment, Your Honor, it is important to understand that this is basically a marine cargo policy. Marine cargo policies are designed for coverage of transit-related risks on an international basis. Why was the premium based on receipts that covered property that was more than marine? Because, Judge, Sections 2 and Section 3 are, in effect, endorsements of the original intent, that Section 2 related to domestic transit as it's related to international transit, as an extension of domestic transit. If you will, Judge, if the automobile parts are manufactured in the interior of China, then transported by rail or truck to the port of China, then transported by sea to the West Coast of the United States, and if in the West Coast of the United States it goes by rail or by truck to a point within the United States, which is what happened in this particular instance, the purpose of the Section 2 and the purpose of Section 3 is to provide coverage all the way throughout, all the way till destination, Judge. So that's the purpose of it. I wonder about the designation of marine policy when I asked Mr. Rothschild about property that doesn't originate outside of the United States, but is shipped from, let's say, Miami to New York to Boston to Chicago, that would be covered. Why, it has nothing to do with the marine policy, does it? Marine, it's commonly understood within marine insurance that sometimes non-marine risks are included in that, and the reason that non-marine risks are sometimes included in marine policies, Judge, because that's the nature of... Commonly understood by whom? Commonly understood by brokers and by underwriters, Judge. How about by insurers? Well, Judge, we never had any communications with KSI. All our communications were done by the broker, and this particular broker represented that they were familiar with marine risks and understanding marine policies, and there were some negotiations with the broker related to that particular issue. Section 2, though, the anomaly here is Section 2 covers, you gave a description of shipping auto parts from China to the West Coast and then across to this Massachusetts warehouse. Judge Fuentes asked about something shipped from Miami up to the Massachusetts warehouse. Section 2 covers both of those shipments, does it not? No, Judge. No? No, we... If not, why? Well, if you go to page A92 of the appendix, you'll see that it's crossed out, and you have to go back to page A57 where a new clause was inserted into that particular section. A what? A57, Judge. And on the top of it, it says Endorsement No. 1 and it says Section 3, Domestic Transit. Both sides agree that it really should have read Section 2, that that was a typographical error and that the first paragraph of Section 2 was inserted with this new paragraph, Judge. Okay? And if you look towards the middle of it, it says, From the time the property leaves the store, warehouse, or factory at initial point of shipment, and continuously thereafter, including while on docks, wharves, piers, bulkheads, transport, until delivered at store, warehouse, or factory at destination. The way that this policy is drafted, the way that this particular policy is drafted is that it's meant for domestic transportation to be an extension of international transportation. That's how it's drafted. That's how it's intended for this particular language. And that's our particular position. Mr. Rothschild says that it's poorly drafted. Are you saying the language that's at page 82 of the appendix is not the language that was in effect for Section 2  Page 82 is Section 1, Your Honor. And Section 1, we say, is incorporated by reference by Section 3. Well, Section... Okay, maybe I have a misnotation. Maybe it's Section 9, Appendix 92. Excuse me. Okay, so that's Section 2, Your Judge, yes. Page 92. Isn't that section what was in effect at the time of the loss? It was in effect at the time of the loss with the substitution of Paragraph 1. Paragraph 1 was substituted with paragraph... of the first paragraph listed in page A57. And that's at A57? That's at A57, yes, Judge. Did the records show when that was substituted? I think so, Judge. I think so. It says, in effect of July 1st, 1999. A57? Yes, A57. July 1st, 1999. Okay. So, our position, Judge, again, just to reiterate, we don't think this is a... I respect Mr. Wealthtraut's characterization as the policy being dense and difficult to understand, but it's our position that the policy is easy, it's quick to understand, and it does relate to Marine Transit international policies. There are three sections here. If you do look at it from an initial point of view, then, you know, the... It's the appellant's position that it's so complicated that it's so dense that it's repetitive, it makes no sense. But from our position, policy ensured is consistently applied all the way throughout. I have no doubt you can write a better contract, Mr. Wealth. It is a little hard to follow. Supposing we were to agree with Mr. Rothschild that there's an ambiguity in the policy, so we have to go to extrinsic evidence. We can include or consider as well, then, Mr. Gosheen's underwriting statement. That statement, as I see it, covers domestic losses, such as occurred in this case. In additional coverage required, he writes, domestic and foreign transit, warehouse storage, all U.S. 11 locations. It seems like the intent was to get full coverage for warehouse storage, whether destined for international shipment or arriving from international ports, as well as destined for domestic shipment. We would point your attention to page A171, page A172. But you read that, I don't have it. In the appendix, it relates to the quotes and the description of the policy that was provided by Peter Gosheen to the broker that's involved. If you look at page A171, and you go towards the section that's described as coverage, it says coverage, and this relates, by the way, to section two. All risks, transportation, endorsement of this company, worldwide geographical limit, excluding the former Soviet Union and Russian Federation. What this is saying is that this, in effect, is an endorsement on the original policy, which is essentially an international marine cargo policy, which is what is described in pages 169 and 170. If you go to page 172, and you go to the section that's entitled coverage, it says all risk, warehouse, storage, endorsement of this company. Again, endorsement on the original intent of the parties, which is that it was an ocean marine cargo policy with an extension for domestic transportation, with an extension for warehouse coverage. But we say that in this particular instance, there was no coverage for these particular goods which originated in domestic transportation and stored at the warehouse. And this is where there was a fire. Unfortunately, there was a fire, and the cargo got destroyed there at that time. That's our position. So we do think that there was intent on the parties to have an understanding of these extensions based on the record that we had before. Even though you'd collect the premium based on all sources. The purpose of calculating the premium that way is actually for the benefit of the insured. If the insured's business is less, the insured's business is greater, there has to be some reasonable way in terms of how to calculate the premium. If there's less amount in the warehouse, then it's really a benefit for them. Otherwise, the underwriter would have charged a flat rate for the entire goods, and that may not have been fair to the insured. I understand what Mr. Rothschild's saying, and I recognize the question, and I appreciate your point. But the calculation of the premium that's based on the inventory is really done for the benefit of the insured in the event that there's wide fluctuations in the inventory or not. But it does include coverage or premiums paid for goods that did not originate in international shipments. I have to concede that point, Judge. If there are no further questions, Judge, I think we're all set. I guess... Well, no. You answered my question already. Thank you, Mr. Lowe. Mr. Rothschild. Your Honor, on the issue of premium with friends like that, you don't need enemies. They charge excessive premium to cover merchandise that they won't pay for when it's damaged and say they did it on our behalf. I just want to make two quick points. What if they say that we made a mistake on the premiums? Here's your excess premium back, and we still don't... They've never made that claim, and it would be a little late after the loss, Your Honor, to do that. Counsel argues that Sections 2 and 3 are endorsements to Section 1. If Your Honor look at the policy, you'll see the policy has actually 30-some-odd endorsements, which are clearly labeled as endorsements. Section 1 of the policy has right at the top Section 1, which wouldn't be necessary if Sections 2 and 3 were going to be endorsed. Section 2 of the policy doesn't say it's endorsement number 2. It says Section 2. Section 3 of the policy says Section 3. This is a policy that is split into three sections because there are three types of risks that are involved. And counsel said Section 1 relates to... You just can't reconcile that position with Mr. Goheen and Royal's acknowledgement that merchandise that is shipped domestically from KSI's warehouse to the ultimate customer would be covered. You cannot reconcile those two with the definition that they choose to use in this argument in this case. I'll be happy to answer any other questions. Mr. Rothschild, thank you very much. Thank you very much. And thank you both for well-presented arguments. We'll take the case under advisory. Let me ask you a question. We have a little extra time. Mr. Lowe, of course, if we agree with your view, that's the end of the case. If we disagree with your view, what's the remedy? The remedy is I think we have to go back to the district judge. But to do what? I mean, the decision is, is there coverage? Is there not coverage? Is there another decision that we can make? Well, if you determine that there's ambiguity, then the question becomes is the record sufficient to determine the intent of the parties? I see. But if we decided on the plain reading of the contract... Plain reading of the contract, then I think that the court could make a determination of coverage based on the record of law. There's no dispute. We have $2.5 million in coverage. We've paid about $700,000 on the international merchandise. And Royal has, I think it's in the papers... The amount of coverage is resolved. The balance of the policy limits would be due under the policy. I disagree with counsel that it needs a remand on ambiguity. Because New Jersey, if you have ambiguity, it must be remanded.